323 A.2d 571.

STATE *vs.* ROBERT FONTAINE.

AUGUST 5, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

ROBERTS, C. J. On June 5, 1972, the grand jury returned two indictments, one charging the defendant, Robert Fontaine, with conspiring with one William Murphy to bribe John J. Gilbert, Jr., "a person summoned as a juror, in the

matter of State vs. Richard Callei," and the other charging Fontaine with the substantive offense of actually promising money to Mr. Gilbert. According to the indictments, the offense took place on June 4, 1972. The grand jury at the same time also indicted William Murphy, charging him in one indictment with conspiracy and in the other with the substantive offense of bribery. The defendant and Murphy were tried together on October 17-20, 1972, before a justice of the Superior Court sitting with a jury which ultimately found each of the defendants guilty on both charges. At the close of the state's case, the defendant Fontaine, pursuant to Super. R. Crim. P. 29, moved for a judgment of acquittal, as did the defendant Murphy. These motions were denied by the trial justice with respect to each of the defendants. At the close of all of the evidence, each defendant again moved for a judgment. of acquittal, and again the court denied each of these motions. The court further denied the motion of each defendant for a new trial, and the defendant Fontaine is now prosecuting an appeal to this court. Since a detailed statement of the facts surrounding the events which occurred on June 4, 1972, is adequately set forth in *State* v. *Murphy*, 113 R. I. 565, 323 A.2d 561 (1974), they are not repeated in this decision.

The defendant Fontaine first contends that the trial justice erred in denying the motion for a judgment of acquittal of his co-defendant Murphy. On that basis he argues that, he and his co-defendant Murphy being the only conspirators indicted, the granting of the motion for a judgment of acquittal to Murphy would preclude convicting him on the charge of conspiracy. We concede, as defendant argues, that the general rule is that one defendant in a prosecution for conspiracy cannot be convicted when all of his alleged coconspirators, be they one or more, have been acquitted or been discharged under circum-

stances which amount to an acquittal. We gave approval to this rule in *State* v. *McElroy*, 71 R. I. 379, 46 A.2d 397 (1946).

However, in the circumstances here, the rule stated in *State* v. *McElroy, supra*, avails defendant Fontaine nothing. An examination of the record discloses that this court in *State* v. *Murphy, supra*, denied and dismissed Murphy's appeal from the ruling of the Superior Court denying his motion for a judgment of acquittal. That being so, it is obvious that there is no factual foundation upon which to rest an application of the rule accepted by this court in *State* v. *McElroy, supra*, because the conviction of Fontaine's coconspirator has been sustained.

The defendant further contends that the trial justice erred in permitting the state to introduce certain evidence regarding a telephone call by State Police Detective Richard M. Wheeler to the Lincoln Woods State Police Barracks and the subsequent stopping of defendant's automobile by State Police Trooper Thomas Hefner. Detective Wheeler testified over objection that after he had observed defendant and Murphy depart from the Gridiron Club parking lot in defendant's automobile, he telephoned the barracks to report a description of defendant's vehicle. This, together with testimony by Trooper Hefner that he stopped defendant's vehicle on Route 146 for an identification check which revealed the identity of Murphy, defendant argues, denied him a fair and impartial trial. The thrust of defendant's contention is that such testimony, although relevant, was prejudicial because it indicated that defendant was known to the State Police. We disagree.

At the outset, we are not concerned with that portion of defendant's contention concerning the identification check made by Trooper Hefner because an objection was not properly made at trial as required by Super. R. Crim.

560

P. 51. Thus, our inquiry is limited to the testimony of Detective Wheeler.

The rule is well settled in this state that relevant evidence which is prejudicial in nature should not be excluded unless the prejudice overrides the relevancy. *State* v. *Rezendes,* 111 R. I. 169, 300 A.2d 472 (1973); *State* v. *Glass,* 107 R. I. 86, 265 A.2d 324 (1970); *State* v. *Reardon,* 101 R. I. 18, 219 A.2d 767 (1966); *see also* 1 Underhill, *Criminal Evidence* §6 at 16 (6th ed. 1973); 1 Wharton, *Criminal Evidence* §151 at 278 (13th ed. 1972). The admission of such testimony is directed to the sound judicial discretion of the trial justice. *State* v. *Rezendes, supra; State* v. *Reardon, supra.*

We have no doubt that Detective Wheeler's testimony was relevant because it corroborated Gilbert's testimony that defendant and Murphy were at the Gridiron Club on June 4, 1972, and furthermore, the fact that defendant and Murphy left in the same automobile was relevant evidence tending to prove the charge of conspiracy. Even assuming that Detective Wheeler's testimony prejudiced defendant in the minds of the jury, we believe that the relevancy of such testimony far outweighed its prejudicial effect. Accordingly, we find that the trial justice did not abuse his sound discretion in refusing to exclude such evidence.

Finally, defendant Fontaine notes that the trial justice inquired of defense counsel in the presence of the jury: "Are you going to call Mr. Fontaine?" Fontaine now contends that this inquiry constituted prejudicial error in that it deprived him of the presumption of innocence and nullified his privilege against self-incrimination. It appears that at that time defense counsel was cross-examining the prosecution's witness, Gilbert, and sought to elicit from him an admission that he had made a prior statement concerning his desperate financial condition and his desire to talk to somebody close to Richard Callei. A con-

ference was called in chambers, where defense counsel represented to the court and the prosecutor that he would introduce a witness, not then identified, who would testify that Gilbert had made such a statement.

Thereafter, back in open court, defense counsel pursued cross-examination, asking Gilbert: "Isn't it true, Mr. Gilbert, that you told him that you wanted to see if he knew anybody that was closely related to or knew Richard Callei?" The witness, Gilbert, denied the whole line of inquiry, and the prosecutor objected thereto "unless there is a representation." At this point the trial justice interrupted the proceedings and told the jury: "What we're talking about here, Ladies and Gentlemen, is if these questions are asked and there is a denial, the cross-examiner has to be prepared to offer evidence to contradict. You can't just ask the question unless you can back it up, so to speak."

Continuing his cross-examination, defense counsel inquired of Gilbert whether Fontaine's codefendant, Murphy, participated in a conversation between Gilbert and Fontaine at the Gridiron Club. He asked Gilbert if during that conversation he had said: " 'If I am picked for jury duty on the Callei case, if you give me $10,000 I'll throw the case.' " It was at this point, during a flurry of objections and explanations, that the court specifically inquired of defense counsel: "Are you going to call Mr. Fontaine?" Defense counsel replied: "I need not call Mr. Fontaine." Thereupon, another conference in chambers was called, during which defense counsel made it clear that the witness who would be called to contradict Gilbert was the codefendant, Murphy.

In this court defendant Fontaine argues that the remark made by the trial court amounted to an adverse comment on his failure to testify which was violative of his fifth amendment rights, relying on *Griffin* v. *California*, 380

562

U. S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106 (1965). The defendant argues that the explanatory remarks of the trial justice, when coupled with the inquiry, implanted in the minds of the jurors the belief that defendant would have to take the stand and testify in line with the quesions of defense counsel. *Griffin* holds that a prosecutor or a judge may not comment adversely on a defendant's failure to testify, and that if he does, it violates the self-incrimination clause of the fifth amendment. "It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." *Id.* at 614, 85 S.Ct. at 1232-33, 14 L.Ed.2d at 109-10.

This court in *State* v. *Sherman*, 113 R. I. 77, 317 A.2d 445 (1974), has adopted the view stated in *Griffin* v. *California, supra,* and holds that the prohibition against such adverse comment reinforces the fifth amendment's privilege against self-incrimination. There can be no doubt that any adverse comment by a prosecutor or a court on the fifth amendment right not to testify in one's own defense brings into question a defendant's failure to testify and may constitute reversible error. In other words, the prime question with which we are confronted in the circumstances here is whether the explanatory statement plus the inquiry of the court were sufficient to constitute an adverse comment on the failure of defendant Fontaine to testify.

The statement in the context in which it was uttered in the instant case differs substantially from the comment made in *State* v. *Sherman, supra.* In the *Sherman* case the prosecutor, in summing up for the jury, said that he wanted to point out to the jurors that "the actual fact of the assault has never been denied." Our conclusion that this was an adverse comment constituting prejudicial error is consistent with the view taken by a number of courts.

These courts hold that where a court or a prosecutor remarks to the jury that the evidence adduced by the prosecution stands uncontradicted or has not been denied, such comment is sufficient to constitute a prejudicial comment upon the failure of the defendant to testify. *Tanner* v. *United States,* 401 F.2d 281 (8th Cir. 1968); *United States* v. *Handman,* 447 F.2d 853 (7th Cir. 1971); *State* v. *Dymond,* 110 N. H. 228, 265 A.2d 9 (1970); *United States* v. *Flannery,* 451 F.2d 880 (1st Cir. 1971); see cases collected in Annot., 14 A.L.R.3d 723 (1967). We have closely scrutinized the transcript in the instant case without finding any disclosure of a comment by either the court or the prosecutor that a jury could reasonably have construed as constituting a statement that the testimony of the prosecution had not been contradicted or denied.

In our opinion, the appropriate test to be applied to the instant case appears to be followed in a number of federal cases. These cases hold that in order for there to have been a violation of the rule stated in *Griffin,* it must first appear that the language used in the comment was manifestly intended or was of such a character that a jury would naturally and necessarily construe it to amount to a comment on the failure of the accused to testify. *Knowles* v. *United States,* 224 F.2d 168, 170 (10th Cir. 1955); *Doty* v. *United States,* 416 F.2d 887, 890 (10th Cir. 1968); *United States* v. *Wells,* 431 F.2d 434, 435 (6th Cir. 1970). In the instant case we cannot read the language used by the court in the context of the remarks made by the prosecutor and counsel for defendant as being of such a character or, for that matter, as being even remotely intended to necessarily constitute a comment directed at the failure of defendant Fontaine to testify.

The circumstance in which the remark and the inquiry were made is persuasive that the above conclusion is warranted. The action transpiring in the courtroom before

the eyes of the jury could hardly be conducive to an understanding thereof by the individual jurors. To the contrary, we are persuaded that the jury at this time was in a state of complete bewilderment.

Counsel for defendant was pressing the prosecution's witness as to whether he had made inculpatory statements to defendant Murphy concerning his, Gilbert's, financial straits and his desire to meet somebody close to Richard Callei. Defense counsel's interrogation was being interrupted almost continuously by a barrage of objections on the part of the prosecutor. The court made several attempts to intervene with inquiries which were more or less ignored by both defense counsel and the prosecutor. Adding to the jurors' certain confusion was the fact that defense counsel was reassuring the court and the prosecutor that he had a witness who would contradict the denials made by the prosecution's witness. In addition, the holding of bench conferences to which the jury was not privy certainly must have added to the jury's confusion, as did the action of counsel and court in retiring to chambers to discuss the situation. We cannot believe that the jury at this point was capable of clearly understanding what information concerning the cross-examination the court was attempting to pass on to it at that time.

It is our opinion that the court was seeking to bring order out of substantial confusion and, to that end, asked what it obviously considered a casual question as to whether counsel intended to put the defendant Fontaine on the stand. The jury, to whatever extent it could make sense out of the court's statement, must have believed this to be his purpose. At least, in all of the circumstances, we are unable to accept the defendant Fontaine's contention that the trial justice either intentionally or inadvertently impregnated the minds of the individual jurors with a conviction that the defendant Fontaine would be re-

quired to take the stand to testify in contradiction of Gilbert's testimony and that if he did not so testify, they would be free to draw unfavorable inferences from his failure to take the stand.

The appeal of the defendant is denied and dismissed, the judgment of conviction is affirmed, and the cause is remanded to the Superior Court.

Motion for reargument denied.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*Raymond J. Daniels,* for defendant.